DANIEL CORY v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF SOMERSET.

47  181
67  437

1. The common count for money had and received will sustain a claim for money fraudulently obtained by the defendant from the plaintiff.
2. The defendant, a member of the board of chosen freeholders, made out bills to himself against the county, ostensibly for money paid by him for work on bridges, not showing when, or by whom, or on what

bridges, or under whose authority the work had been done. These bills were certified by the defendant as one of a committee of the freeholders, were ordered paid by the director of the board, and were receipted by the defendant. *Held*, that they were competent evidence in support of the charge that the defendant had fraudulently obtained the county funds.

3. Proof that the bills above described, being each for less than $500, were paid by the county collector, pursuant to the orders of the director, is evidence that the moneys paid were county funds.

On writ of error to the Somerset Circuit.

Argued at February Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *A. A. Clark* and *J. R. English.*

For the defendant in error, *J. D. Bartine.*

The opinion of the court was delivered by

DIXON, J.   The first question raised by the assignment of errors in this cause is whether money fraudulently obtained by the defendant below from the plaintiff can be recovered on the common count for money had and received, which does not set out the particulars of the fraud.

This may be answered by extracts from the opinion of the King's Bench, delivered by Lord Mansfield in *Moses* v. *Macferlan*, 2 *Burr*. 1005 : "If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt and gives this action [on the case, for money had and received to the plaintiff's use,] founded in the equity of the plaintiff's case, as it were, upon a contract.   *   *   *   One great benefit which arises to suitors from the nature of this action is that the plaintiff need not state the special circumstances from which he concludes ' that, *ex æquo et bono*, the money received by the defendant ought to be deemed as belonging to him.'   He may declare generally ' that the money was received to his use,' and make out his case at the trial.   *   *   *

This kind of equitable action, to recover back money which ought not in justice to be kept, is very beneficial, and therefore much encouraged. * * * It lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition (express or implied,) or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. * '* * In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged, by the ties of natural justice and equity, to refund the money."

The plaintiff's declaration is properly framed to sustain its claim.

The second question raised is whether the Circuit Court erred in permitting certain exhibits to go to the jury as evidence. These exhibits consisted of sundry bills, made out against the plaintiff in favor of the defendant, approved by a committee of chosen freeholders, ordered to be paid by the director of the board, and receipted by the defendant on payment by the county collector.

One of the facts to be proved by the plaintiff was that the money which it sought to recover had been received by the defendant. These receipted bills were direct evidence of that fact, and consequently the court's refusal to exclude them was not error.

The defendant's objection, however, was aimed at their being received as evidence tending to support the charge of fraud which the plaintiff made against him. In strictness, this objection should have been urged distinctly against their use, and not against their admission; but since the bills of exception indicate that they were treated as affording some evidence on the allegation of fraud, notwithstanding the defendant's objection, the merits of his complaint may be here considered.

The exhibits are in the following or similar form, viz. :

"WARREN TOWNSHIP, September 25th, 1868
"Somerset county, to Daniel Cory, Dr.
"To cash paid for mason work done to bridges.......... $24 00
"To cash paid for repairing two bridges..................... 12 30

$36 30

"The director of the board of chosen freeholders of Somerset county will please order the above two bills paid.

"DANIEL CORY,
"JOHN McBRIDE,
"SAMUEL LEWIS,
"*Committee.*

"$36.30.   County collector will please pay the above two bills of thirty-six dollars and thirty cents, dated September 25th, 1868.

"SAMUEL LEWIS,
[Endorsed]—"DANIEL CORY.                    *Director.*"

None of the exhibits, thirty-two in number, contained any further specification than that above copied, anything to show to whom the defendant had paid the money which he claimed, or upon what bridge, or when, or by whom or at whose instance the work or materials paid for had been furnished. Nor do they appear to have been accompanied by any statement of these particulars. Some of them were for less than $50, and some for more than $50 and less than $500. During the period covered by these bills, the defendant was a member of the board of chosen freeholders of Somerset county, and part of the time was director of the board. Every one of the bills except two, Exhibits 39 and 41, was approved by the defendant as a committeeman or ordered paid by him as director.

When these bills were made out and paid to the defendant, the law (*Bridge act, Nix. Dig., p.* 87,) authorized the overseer of highways and the two chosen freeholders of any township, or the major part of them, to direct and contract for the building or repairing of a bridge in their township, provided

the cost did not exceed $50, and empowered the chosen free-holders of any township and those of the two next adjacent townships, or a majority of them, to direct and contract for the building or repairing of a bridge in the township, provided the cost exceeded $50 and was less than $500. Bills thus contracted the director of the board had a right to order paid out of the county funds. These provisions, however, are not to be regarded as at all impairing the general authority of the board of chosen freeholders over the construction and reparation of public bridges, or the duty of the board to see to the proper expenditure of county moneys. *Cory* v. *Freeholders of Somerset,* 15 *Vroom* 445. The statutes (*Nix. Dig., p.* 128, § 43, *and p.* 1066,) also required the board of chosen free-holders to make out and publish annually, in the county, a detailed statement of all the county expenditures for the preceding year, including every description of expenditure, by items, the amount claimed and the amount allowed in each instance, for what purpose, by whom ordered, and to whom paid.

By these enactments it appears that the director of the board, before ordering paid ills for the construction or repair of a bridge, should know in what township the bridge was located, by what officers the work had been ordered, and whether the total cost had exceeded $50 or $500, and that each bill presented to him should disclose the particulars necessary to enable the board to make its annual statement in detail as required by law; and it was the duty of the defendant to see that these legal proprieties were observed in all cases where his official action was invoked.

The exhibits, however, when looked at by themselves, show that the defendant, by the use of his official position as a chosen freeholder, had procured public moneys to be paid to himself, ostensibly for work on bridges, by direction of an officer having a very limited authority over public funds, without presenting to that officer any evidence that any work had been legally ordered or had been done at all upon any public bridge, without the disclosure of any circumstances by

which the justice of his claim could be fairly investigated, and without placing on the public files those details which it was his duty to have preserved.

Certainly it was permissible to lay these matters before the jury in support of a charge that the defendant had fraudulently obtained the public funds. The mere absence from the bills of those statements which the defendant as a public officer ought to have inserted in them if true, was calculated to arouse a suspicion that there was some improper motive for withholding them, and the fact that the bills were made out in the defendant's interest suggested what that motive might be. How strong would be the suspicion, was a question not relevant to the competency of the testimony.

The exhibits constituted legal evidence, and their admission was not error.

The next exception is to the refusal of the court to order a non-suit.

The only reason urged for the non-suit was that the plaintiff had failed to show that the money received by the defendant was county money. The argument adduced was that, *according to the plaintiff's contention,* the bills paid were illegal and fraudulent on their face, and there appeared no facts which authorized the director of the board to order the public moneys to be paid; that a payment made by the county collector on such an order must be regarded as a payment of his own funds, and that therefore he remained answerable to the county for the same amount of money as if he had not paid these bills, and the defendant's responsibility, if any, was to the collector personally.

The replies to this reasoning are, first, that the orders on the collector were such as the director of the board had authority to make on receiving proper evidence that the debts had been legally contracted, and whether such evidence had been furnished to him it was not for the collector to inquire. The collector therefore had the right to pay the orders with the county funds. Second, that the money was, both in fact and according to the intention of all the parties, paid from the

county treasury, and the defendant cannot escape accountability therefor by setting up the illegality of his own conduct.

We find no error in the record, and the judgment must be affirmed.